**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| JAMES LEE BRADY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 10-cv-673-TLW |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Plaintiff, James Lee Brady, pursuant to 42 U.S.C. § 405(g), requests judicial review of the decision of the Commissioner of the Social Security Administration denying his claim for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI") under the Social Security Act ("SSA"), 42 U.S.C. §§ 416(i), 423, 1382c(a)(3). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before the undersigned United States Magistrate Judge. (Dkt. # 9). Any appeal will go directly to the Tenth Circuit Court of Appeals. For the reasons discussed below, the Court AFFIRMS the Commissioner's decision.

**Standard of Review**

Plaintiff's applications for disability insurance benefits and supplemental security income were filed on June 20, 2008, alleging an onset date of April 17, 2007. (R. 128, 122). The Administrative Law Judge ("ALJ"), Deborah L. Rose, held a hearing on December 1, 2009. (R. 30). On January 21, 2010, the ALJ issued a decision finding that plaintiff had not been disabled from April 17, 2007 to January 21, 2010, and that plaintiff is not disabled under the Social Security Act. (R. 23-24). On August 27, 2010, the Appeals Council denied review. (R. 1). The decision of the Appeals Council represents the Commissioner's final decision for purposes of

further appeal. 20 C.F.R. §§ 404.981, 416.1481. On December 20, 2010, plaintiff filed the subject action with this Court. (Dkt. # 1).

The role of the Court in reviewing a decision of the Commissioner under 42 U.S.C. § 405(g) is only to determine whether substantial evidence supports that decision and whether the applicable legal standards were applied correctly. See Briggs ex. rel. Briggs v. Massanari, 248 F.3d 1235, 1237 (10th Cir. 2001). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. Casias v. Secretary of Health & Human Service, 933 F.2d 799, 800 (10th Cir. 1991).

## Issue on Appeal

On appeal, plaintiff asserts the ALJ erred in failing to properly weigh the relevant medical opinions in the record and more specifically in failing to mention the weight, if any, that was given to plaintiff's treating physician's opinion. (Dkt. # 15 at 2-3). Thus, the plaintiff argues that the ALJ failed to follow the correct legal tests by not properly analyzing and weighing the medical evidence in the file. Id. at 3.

## Background

Plaintiff was born on November 19, 1968 and was 38 years old on April 17, 2007, his alleged onset date. (R. 122). He has a high school education. (R. 152). Plaintiff has worked numerous jobs including as a telemarketer, machine tool setter, a truck driver, a police dispatcher, a corrections officer, a waste recycler, a transportation equipment operator, an oil change servicer, a night manager at an auto-parts store, an employee of a municipal water

department, and an employee for the Oklahoma Department of Transportation (ODOT) in equipment operations and equipment technology. (R. 34-37, 40, 147, 167). On April 17, 2007, plaintiff injured himself while working for Charles Machine Works as a tool setter. While using a hoist to load a fixture into a steel cart, plaintiff injured his lower back when a back wheel on the cart pivoted. (R. 42-43). After the injury, plaintiff attempted to return to "light duty" in October 2007 but was unable to work a full day stating, "I got out there and it wasn't light duty." (R. 44). This is the only time plaintiff attempted to return to work after the April 17 injury. (R. 44).

Plaintiff testified that his injury causes constant pain in one or both legs, affecting his ability to concentrate on tasks. Plaintiff stated he can only stand or sit for fifteen to twenty minutes before he must move around and resituate. At most, plaintiff stated he can stand for thirty minutes before he must sit down. (R. 45-46). Plaintiff testified that he cannot carry a twenty pound bag of potatoes but can reach for a gallon of milk out of the refrigerator. Plaintiff further stated that bending over and reaching for items on the ground is difficult. (R. 47). Plaintiff takes medication for pain, depression, and anxiety; however, he felt the pain medication was not helping. Plaintiff also stated he has trouble socializing, and sleeping at night. (R. 48-50, 52). Normal days consist of watching television in a loveseat, reading, and pacing. (R. 52). Plaintiff alleges he is unable to work due to the pain, confusion, and weakness. (R. 53). On his Function Report, plaintiff stated he can lift no more than ten pounds. (R. 162).

Dr. Blake A. Baird, M.D., examined plaintiff on April 17, 2007, the date of the alleged onset of injury. Dr. Baird determined plaintiff had lumbar strain and released plaintiff to "light activity." (R. 215). On April 26, 2007, Dr. Baird ordered an MRI to evaluate plaintiff's back injury. The MRI impression revealed:

      1.) congenital transitional vertebra at the lumbosacral junction as described.
      2.) multilevel degenerative disc disease and facet osteoarthritis.
      3.) combination broad based disc bulge and small subtle left parasagittal disc extrusion/herniation at L4-5 causing moderate to severe left lateral recess stenosis and compression of the left L5 root.
      4.) small central disc extrusion/herniation at L3-4 causing mild to moderate central canal stenosis and lateral recess stenosis, but no definite focal neural compression.

(R. 203-04).

      Dr. Thomas G. Craven, M.D., evaluated plaintiff on May 17, 2007, and reviewed the MRI which he agreed showed disc protrusions and herniations at L3-4 and L4-5. Dr. Craven stated he would like to try an epidermal steroid injection and a physical therapy program. Dr. Craven recommended light work duty with five-pound restrictions and frequent breaks. (R. 207). In June of 2007, Dr. Craven stated plaintiff completed some physical therapy which plaintiff claimed was not helpful. In addition, Dr. Craven stated plaintiff did not receive any epidermal steroid injections. (R. 208).

      Dr. Emily D. Friedman, M.D., a neurosurgeon and one of plaintiff's treating physicians, evaluated plaintiff on multiple occasions in 2007 (on July 18, August, 16, October 8, October 15, December 3, and December 27). (R. 262-280). Dr. Friedman noticed that plaintiff "overexaggerated" some of his pain including "grimacing . . . and severe effort" during examination and that there was no anatomic misalignment of the spine, no tenderness or palpation over the bony landmarks, and full symmetrical strength in both lower extremities. Dr. Friedman reviewed the MRI records, finding nothing new, and recommended physical therapy, muscle relaxers and non-narcotic pain medicine, and an epidural steroid injection at L4-L5. (R. 265-66). Dr. Friedman's work restrictions from July 18, 2007 indicate a fifteen pound maximum weight lifting restriction during an eight hour day without walking or sitting for more than twenty minutes at a time, including no crawling, kneeling, bending, squatting, or stooping.

Pushing and pulling was also restricted to fifteen pounds. Overhead and away-from-body restrictions were also put in place at a frequency of three times an hour. (R. 274). During a follow-up on August 16, 2007, Dr. Friedman's progress note stated physical therapy had not made much of a difference in improving plaintiff's injury. Dr. Friedman recommended decompression and a myelogram/CT scan, and she made no changes to his work restrictions. (R. 267, 272). A follow-up on October 8, 2007, revealed plaintiff thought physical therapy helped improve his condition. Dr. Friedman's progress note stated plaintiff continued to have back and left leg pain. Dr. Friedman stated plaintiff never had a myelogram/CT scan for "various reasons including his hesitancy, his anxiety, and his lack of having money for gas." Dr. Friedman's progress note states "(o)verall (plaintiff) has improved" and further that "he wants to go back to work." Dr. Friedman encouraged plaintiff to use Darvocet and released plaintiff "to light duty work with no lifting more than 25 pounds occasionally," plus no continuous sitting greater than twenty minutes and no bending, stooping, crawling, or squatting. Pushing and pulling was restricted to twenty-five pounds. Dr. Friedman also restricted away from body reaching. (R. 268, 277). On an October 15, 2007 follow-up, plaintiff rated his pain as a 6-7 on a scale of 10. Work restrictions revealed no changes. (R. 269, 276). During a follow-up on December 3, 2007, plaintiff revealed pain was still severe at a 6-7 on a scale of 10. Plaintiff was not working with Dr. Friedman's restrictions. Dr. Friedman amended her work restrictions to include no twisting or prolonged standing; otherwise restrictions remained the same at light duty. (R. 270, 275). A final follow-up with Dr. Friedman occurred on December 27, 2007, when plaintiff told Dr. Friedman he did not want to have surgery and was comfortable using Lortab and Darvocet as medication. Dr. Friedman stated plaintiff's Functional Capacity Examination[1] was realistic. Dr.

---

[1] Dr. Friedman's December 3, and December 27, 2007 progress notes indicated a Functional

Friedman further stated, "I think he is capable of lifting 50 pounds from waist level only, 25 pounds from floor level. This should be intermittent. He should bend and stoop only occasionally rather than frequently. There were no inconsistencies in his testing." Dr. Friedman stated plaintiff had reached maximum medical improvement regarding his injury and regarding his surgical care (since plaintiff did not want to pursue surgery). (R. 271, 273).

Dr. Charles Henson, D.O., examined plaintiff on August 7, 2008, and assessed him with chronic low back pain, multi-level degenerative disc disease, left disc extrusion at the L4-L5 level with compression of the L5 root, and disc extrusion herniation at the L3-L4 level, without definite focal neuro compression. (R. 300).

Dr. Thurma Fiegel, M.D., completed a physical residual functional capacity assessment of plaintiff on August 15, 2008. Dr. Fiegel concluded that plaintiff could occasionally lift twenty pounds, frequently lift ten pounds and sit, stand or walk for a total of six hours in an eight hour work day with unlimited pushing/pulling other than the stated weight lifting restrictions. (R. 307). Dr. Fiegel determined plaintiff could occasionally stoop. (R. 308). Dr. Fiegel stated her findings were not significantly different from the findings of Dr. Friedman, but the RFC was "slightly more limited . . . based on current exam and complaints." (R. 311-12).

Dr. Robert S. Schlottmann, Ph.D., completed a psychological evaluation of plaintiff on November 6, 2008. Plaintiff told Dr. Schlottmann that he tries to perform household chores including making beds, washing dishes, and vacuuming; however, he cannot mow the lawn and has trouble lifting his arms to reach for things. Dr. Schlottmann found plaintiff has the ability to

---

Capacity Examination ("FCE") of plaintiff was completed On December 20, 2007. (R. 270-71). However, the Court cannot locate any documents in the record to provide further information on this.

understand instructions, attend to tasks, read and write, relate to others, and remember things. Dr. Schlottmann diagnosed plaintiff which adjustment disorder with depressed mood. (R. 324).

On November 12, 2008, Dr. Deborah Hartley conducted a psychiatric review technique of plaintiff. (R. 326). Dr. Hartley diagnosed plaintiff with adjustment disorder with depressed mood. (R. 329). She determined this was a non-severe impairment. (R. 326). Dr. Hartley determined there were only mild limitations in the areas of activities of daily living, maintaining social functioning, maintaining concentration, persistence, or pace, and episodes of decompensation. (R. 336).

Dr. Ronald P. Walcher, M.D., another treating physician, examined plaintiff on June 10, 2008, after plaintiff complained of back pain. Dr. Walcher assessed plaintiff with lumbar disc disease. (R. 348). During a follow-up on June 16, 2008, plaintiff continued to have low back pain and Dr. Walcher prescribed plaintiff Darvocet for pain. (R. 349). On August 29, 2008, plaintiff complained of anxiety and depression. Dr. Walcher further assessed plaintiff with depression and anxiety and prescribed plaintiff Wellbutrin for the depression. (R. 318-19, 349). Dr. Walcher stated plaintiff's depression imposes more than minimal limitations. (R. 321). From October 29, 2009 to September 23 2009, follow-up visits revealed plaintiff's conditions remained fairly consistent with his depression showing signs of improvement after plaintiff switched from Wellbutrin to Citalopram. (R. 349-52). In a letter dated January 16, 2009, Dr. Walcher stated:

> James Brady has been a patient in my medical practice since 3/9/2004. In April of 2007, he injured his lower back and has been unable to work since due to the chronic low back pain that frequently radiates to his left leg. MRI of the lumbar spine on 4/26/07 showed disc bulging and facet hypertrophy with spinal canal stenosis and flattening of the left L5 nerve root. It is my opinion that James Brady is unable to do any manual labor at this time due to the lumbar disc disease.

(R. 350).

7

At step one of the five step sequential analysis,[2] the ALJ determined that plaintiff had not engaged in substantial gainful activity since the alleged onset date. At step two, the ALJ determined plaintiff had degenerative disc disease with herniated nucleus pulposus in the lumbar spine, a medically severe impairment. The ALJ further determined plaintiff's mental impairment of adjustment disorder with depressed mood is nonsevere. In making this mental impairment determination, the ALJ concluded the plaintiff has mild limitation in the area of "activities of daily living" noting that plaintiff has difficulty shaving due to standing. In the area of "social functioning," the ALJ concluded plaintiff has a mild limitation noting plaintiff's testimony that "he gets along with everyone." As to "concentration, persistence, or pace," the ALJ determined plaintiff had a mild limitation, noting plaintiff's testimony that pain affects his ability to concentrate, while also noting plaintiff can read and watch television. Finally, the ALJ concluded plaintiff has had no episodes of decompensation. (R. 18).

At step three of the analysis, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). The ALJ stated, "I have carefully compared the claimant's signs, symptoms, and laboratory findings with the criteria specified in all of the Listings of Impairments, specifically Listing l.04, pertaining to disorders of the spine." (R. 19).

---

[2] The Commissioner's regulations set forth a five-step process for evaluating disability under the SSA. The five steps are: (1) Is the claimant currently working? (2) Does the claimant have a medically severe impairment? (3) Does the impairment meet or equal an Appendix 1 listing for presumptive disability? (4) Does the impairment prevent the claimant from performing her past relevant work? (5) Does the impairment prevent the claimant from performing any other work? See 20 C.F.R. §§ 404.1520, 416.1520, 416.920.

Prior to step four, the ALJ determined plaintiff has the residual functional capacity ("RFC") to perform light work, limited to occasional stooping.[3] The ALJ stated:

> In making this finding, I have considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p. I have also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

(R. 19).

After considering, reviewing and discussing all of the relevant evidence, the ALJ determined the RFC assessment was supported by the objective medical evidence and was not contradicted. The ALJ stated she gave "great weight" to the state medical consultants, and the fact that Dr. Friedman, neurosurgeon and treating physician, released plaintiff to "light work."[4] (R. 23).

Thus, at step four, the ALJ determined that plaintiff was capable of doing his past relevant work as a telemarketer.[5] In support of this determination, the ALJ cited the Vocational

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

[4] For the ALJ's discussion regarding plaintiff's RFC determination, see (R. 19-23).

[5] Telemarketing (DOT code 299.357-014) is sedentary & semi-skilled work, SVP of 3. (R. 54). "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a).

Expert's testimony that stated there were no conflicts between the occupational evidence and the information in the Dictionary of Occupational Titles. (R. 23).

## Issue on Appeal

Whether the ALJ applied the correct legal standards when analyzing the relevant medical opinions in the record.

## Discussion

Plaintiff alleges the ALJ applied incorrect legal standards when analyzing the medical evidence in the record. (Dkt. # 15 at 8). Plaintiff agrees the ALJ considered and discussed all of the relevant medical evidence. (Dkt. # 15 at 2, 6). However, plaintiff argues the ALJ did not properly assign weight to the relevant medical opinions reflected in this evidence, particularly the medical opinion of one of plaintiff's treating physicians, Dr. Ronald Walcher. (Dkt. # 15 at 2). Specifically, plaintiff argues that the ALJ failed to articulate what weight, if any, was given to Dr. Walcher's opinion and the opinions of the other physicians. Id.

The ALJ is required to evaluate all relevant medical opinions contained within the record. 20 C.F.R. §§ 404.1527(d), 416.927(d); Baker v. Bowen, 886 F.2d 289, 291 (10th Cir. 1989) (requiring the ALJ to "consider all relevant medical evidence of record in reaching a conclusion as to disability."). Furthermore, as for a treating physician's opinion evidence:

> Under the regulations, the agency rulings, and our case law, an ALJ must "give good reasons in (the) notice of determination or decision" for the weight assigned to a treating physician's opinion. 20 C.F.R. § 404.1527(d)(2); see also Social Security Ruling 96-2p, 1996 WL 374188, at *5; Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir.2003). Further, the notice of determination or decision "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p, 1996 WL 374188, at *5.

Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003).

10

Plaintiff cites Watkins in support of his argument. (Dkt. # 15 at 2 (citing Watkins, 350 F.3d at 1301)). In Watkins, the ALJ's RFC determination was inconsistent with the treating physician's opinion. 350 F.3d at 1299-1300. The ALJ determined that Watkins had the RFC to perform light work, concluding at step four of the sequential analysis that Watkins maintained the ability to perform past relevant work as a social worker. Id. at 1299. Yet, Watkins' treating physician wrote a letter stating: "the nature and severity of appellant's 'multiple health problems,' including chronic back pain, knee pain, and sleep apnea, rendered appellant 'unable to work an eight-hour day doing anything, sitting or standing.'" Id. (underline omitted). Thus, the ALJ's RFC determination was clearly inconsistent with the treating physician's opinion. Id. at 1299-1300. When an ALJ rejects the opinion of a treating physician, the ALJ must give "specific, legitimate reasons" for doing so. Id. at 1301. In Watkins, the ALJ "failed to articulate the weight, if any, he gave Dr. Rowland's opinion, and he failed also to explain the reasons for assigning that weight or for rejecting the opinion altogether." Id.

Here, as in Watkins, plaintiff relies on a statement in a letter from his treating physician:

> James Brady has been a patient in my medical practice since 3/9/2004. In April of 2007, he injured his lower back and has been unable to work since due to the chronic low back pain that frequently radiates to his left leg. MRI of the lumbar spine on 4/26/07 showed disc bulging and facet hypertrophy with spinal canal stenosis and flattening of the left L5 nerve root. **It is my opinion that James Brady is unable to do any manual labor at this time due to the lumbar disc disease.**

(R. 350) (emphasis added). Unlike Watkins, plaintiff's treating physician did not conclude that plaintiff was "unable to work an eight-hour day doing anything, sitting or standing." Watkins, 350 F.3d at 1299. Rather, he merely said that plaintiff was not able to do any "manual labor at

11

this time."[6] (R. 350). The Commissioner argues the ALJ's RFC and step four finding were consistent with Dr. Walcher's opinion. (Dkt. # 16 at 6). The Court agrees and finds the ALJ's "light work" RFC determination is not a rejection of plaintiff's treating physician's opinion and is not inconsistent with it. More importantly, this case was resolved at step four of the sequential analysis. (R. 23). At step four of the sequential analysis, the ALJ concluded plaintiff was not disabled because he was capable of performing his past relevant work as a telemarketer. (R. 23). Telemarketing is semi-skilled work at the sedentary level of exertion, a level below light work with the lowest level of physical exertion requirements. (R. 23, 54); 20 C.F.R. §§ 404.1567(a), 416.967(a). Sedentary work is not inconsistent with an inability to perform manual labor. Plaintiff stated that he is unable to lift <u>more than ten pounds</u>. (R.162). Telemarketing work at the sedentary level requires plaintiff to lift <u>no more than ten pounds</u>.[7]

Conversely, if Dr. Walcher's letter had provided specific limitations on plaintiff's ability to perform certain work inconsistent with the ALJ's "light" or "sedentary" work determination, the decision in this case would certainly be different. The ALJ would then be required to articulate the weight he gave to Dr. Walcher's opinion and provide legitimate reasoning for rejecting it.

Based on the foregoing, this Court cannot conclude the ALJ's RFC determination and step four finding that plaintiff can perform past relevant work at the sedentary level is a rejection of Dr. Walcher's opinion that plaintiff is unable to perform manual labor. The two are not inconsistent. All of the relevant medical evidence agrees that plaintiff has an impairment in the

---

[6] Furthermore, Dr. Walcher's additional statement in his letter that plaintiff has been "unable to work" since the injury is an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e)(1) ("A statement by a medical source that you are "disabled" or "unable to work" does not mean that we will determine that you are disabled.").

[7] Sedentary work involves lifting no more than 10 pounds at a time . . . ." 20 C.F.R. §§ 404.1567(a), 416.967(a).

form of lumbar/degenerative disc disease, but this impairment is not inconsistent with the ALJ's RFC assessment. Thus, because the medical opinions are not inconsistent with the RFC determination and the ALJ's step four finding, the ALJ was not required to weigh evidence or provide detailed reasoning for her decision. See Howard v. Barnhart, 379 F.3d 945, 947 (10th Cir. 2004) (holding "(w)hen the ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is weakened.").

Plaintiff also alleges the ALJ erred in failing to state what weight was given to each of the relevant medical opinions in the record. (Dkt. # 15 at 6). The Court disagrees. The ALJ was not required to assign weight to the opinions of the physicians, because they were not inconsistent with each other or the ALJ's decision. The relevant regulations provide:

> If all of the evidence we receive, including all medical opinion(s), is consistent, and there is sufficient evidence for us to decide whether you are disabled, we will make our determination or decision based on that evidence. If any of the evidence in your case record, including any medical opinion(s), is inconsistent with other evidence or is internally inconsistent, we will weigh all of the evidence and see whether we can decide whether you are disabled based on the evidence we have.

20 C.F.R. §§ 404.1527(c)(1)&(2), 416.927(c)(1)&(2).

In support of his argument, plaintiff claims Dr. Walcher's opinions are inconsistent with the State's physicians, specifically those of Dr. Thurma Fiegel. (Dkt. # 15 at 5). Dr. Fiegel determined plaintiff had the ability to perform light work with occasional stooping. (R. 307-08). Again, Dr. Fiegel's determination that plaintiff can perform light work is not suggestive that plaintiff *can* perform manual labor. Dr. Fiegel's determination does not conflict with Dr. Walcher's opinion regarding plaintiff's inability to perform manual labor. Plaintiff directs the Court to no other evidence that suggests inconsistencies among the medical opinions in the

13

record or, more importantly, that plaintiff's impairment restricts him from performing sedentary work as a telemarketer.

The record reveals no meaningful medical evidence that is inconsistent. Thus, the ALJ was not required to weigh all of the opinions in the record or conduct any sort of controlling weight analysis. The ALJ discussed and thus considered all of the relevant medical opinions in the record. (R. 21-23). The regulations require the ALJ to do nothing more. The ALJ concluded her opinion stating "(the State Agency medical consultants') opinions are well supported by the medical evidence of record and **are not contradicted**." (R. 23) (emphasis added). She is correct. For these reasons, the ALJ did not err in not discussing the weight attached to each medical opinion in the record, since the regulations do not require her to do so.

## Conclusion

Based on the foregoing, the Court finds that the ALJ applied the correct legal standards in arriving at the decision. Furthermore, the ALJ's decision is supported by substantial evidence. Thus, the Court AFFIRMS the decision of the Commissioner denying disability benefits to plaintiff.

SO ORDERED this 29th day of March, 2012.

_____
T. Lane Wilson
United States Magistrate Judge